Ara Sahelian, Esq., SBN, [CBN 169257]
SAHELIAN LAW OFFICES
23046 Ave de la Carlota, Ste 600
Laguna Hills, CA 92653
Direct : 949 859 9200
Fax : 949 954 8333
email : sahelianlaw@me.com
Attorneys for Bhupinder S. Mac; Apro, LLC, a Delaware Limited Liability Company

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**(Western Division - Los Angeles)**

| | |
|---|---|
| Brian Whitaker<br>　　　Plaintiff,<br>　　vs.<br>Bhupinder S. Mac; Apro, LLC, a Delaware Limited Liability Company<br>　　　Defendants. | CASE NO.: 2:19-cv-03002-ODW-E<br>THE HONORABLE Otis D. Wright, II<br><br>**POINTS AND AUTHORITIES MOTION TO DISMISS FRCP 12(b)(1)**<br><br>Complaint filed: 4/18/19<br>Date: July 8, 2019<br>Time: 1:30PM |

.

## POINTS AND AUTHORITIES
## MOTION TO DISMISS FRCP 12(b)(1)

### I. BACKGROUND

This Motion is being made on behalf of Apro, LLC and Bhupinder S. Mac (hereinafter "Defendants"). On April 18, 2019 plaintiff, Brian Whitaker (hereinafter "Plaintiff"), filed this action against Defendants, in relation to a filling station located at 14505 Ventura Blvd., Sherman Oaks (hereinafter also, "Site"), asserting claims for "Damages And Injunctive Relief For Violations Of: American's With Disabilities Act; Unruh Civil Rights Act."

**Compliance with Local Rule 7-3:** the parties met and conferred on May 22, 2019, and thereafter, regarding issues salient to a motion to Dismiss under Rule 12(b)(1). (Counsel's Declaration, Exhibit A).

**Relief Sought:** the Court should dismiss the Complaint for its failure to allege Article III Standing. If Plaintiff is granted leave to amend, the Court should decline to exercise Supplemental Jurisdiction over the remaining State causes of action on grounds Plaintiff is doing an "end-around" State law.

### II. DISCUSSION

**(a) The Complaint is Jurisdictionally Defective**

The complaint is jurisdictionally defective and subject to dismissal under Federal Rule of Civil Procedure 12(b)(1), "[f]ederal courts are required *sua sponte* to examine jurisdictional issues such as standing."

*Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002); *United States v. Hays*, 515 U.S. 737, 742, (1995). The existence of Article III standing is not subject to waiver. *Id.,* 742. It must be demonstrated "at the successive stages of the litigation," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3). "[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'" *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541.

<u>Plaintiff Must Allege Facts Demonstrating the Existence of an Injury-In-Fact, Even at the Pleading Stage.</u>

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Lujan*, 560. To that end, "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist." "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating" the existence of an injury in fact. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Plaintiff avers that he is substantially limited in his ability to walk. He suffers from a C-4 spinal cord injury and uses a wheelchair for mobility, that he: "went to the Gas Station in March 2019 with the intention to avail himself of its goods or services, motivated in part to determine if the defendants comply with the disability access laws." *Complaint,* ¶10; that "Unfortunately, on the date of the plaintiff's visit, the defendants did not provide accessible paths of travel

in conformance with the ADA Standards." *Id.,* ¶13; that "Plaintiff personally encountered this barrier." *Id.*, ¶15; that "By failing to provide accessible paths of travel, the defendants denied the plaintiff full and equal access." *Id.,* ¶16; that "The lack of accessible paths of travel created difficulty and discomfort for the Plaintiff." *Id.,* ¶17; that "Plaintiff will return to the Gas Station to avail himself of goods or services and to determine compliance with the disability access laws once it is represented to him that the Gas Station and its facilities are accessible …" *Id.,* ¶20.

Although Plaintiff alleges that he is physically disabled, and that he visited the Site and encountered architectural barriers that denied him full and equal access, he does not allege how his disability relates to the barriers so as to deny him the "full and equal" access that would satisfy the injury-in-fact requirement. In other words, the Complaint does not connect the alleged violations to Plaintiff's disability, or indicate how he encountered any one of them in such a way as to impair his full and equal enjoyment of the Site. "Chapman leaves the federal court to guess which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy when shopping at Pier One. Nor does he identify how any of the alleged violations threatens to deprive him of full and equal access due to his disability if he were to return to the Store, or how any of them deter him from visiting the Store due to his disability. Although Chapman may establish standing as to unencountered barriers related to his disability, the list of barriers incorporated into his complaint does nothing more than "perform a wholesale audit of the defendant's premises." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939,

955 quoting *Martinez v. Longs Drug Stores, Inc.*, No. CIV-S-03-1843 DFL CMK, 2005 U.S. Dist. LEXIS 23737, at 12 (E.D. Cal. Aug. 25, 2005). Because Chapman lacked standing at the outset of this litigation to assert the ADA claims, *the district court should have dismissed them*. *Id.*, 955. (Emphasis added).

Here, the complaint fails to state:

1. The date or dates on each particular occasion on which the Plaintiff encountered the specific access barrier;

2. Allege the way in which the barrier(s) are related to his disability;

3. Allege the way in which the barrier(s) denied Plaintiff full and equal use or access; or

4. Allege how it deterred Plaintiff, on each particular occasion;

5. Explain whether Plaintiff was on his own or with an assistant.

Next, a plaintiff must aver that he suffered an injury in fact that is concrete, particularized, actual, and *imminent* to have constitutional standing to bring suit under the ADA, that he would return if the ADA violations were remedied. *The intent to return must be sincere. Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041.(Evidence of past patronage of the business, location within a reasonable distance from Plaintiff's residence and along a familiar bus route, plus a sincere intent to return is sincere could demonstrate an "actual or imminent" injury.) *Parr v. L & L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065, 1079.

*D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031 is instructive. The plaintiff in *D'Lil*, a paraplegic, traveled to Santa Barbara on a work trip. Id. at 1034. After encountering access barriers during her stay at the Best

Western Encina, she brought suit against the hotel. She "gave detailed reasons as to why she would prefer to stay at the Best Western Encina during her regular visits to Santa Barbara." *Id*. at 1039. Id. Her intent to return to the Santa Barbara area was evidenced by the regularity with which she visited the city before, during, and after her stay at the Best Western Encinata. By her declaration, and her testimony at the evidentiary hearing, D'Lil demonstrated that *she has been visiting the Santa Barbara area since the early 1980s for both business and pleasure*. From 1993 to 2000, she had visited approximately 1-3 times per year.

Here, the Complaint is silent as to:

1. Plaintiff's current residence;

2. Distance from his residence to the Site;

3. Previous visit(s) to the Site;

4. Connection to the geographic area;

5. A sincere (credible and plausible) plan to return.

Plaintiff has averred none of these elements.

Defendants should not have to commence costly discovery, i.e. notice the Plaintiff's deposition, only to discover that elemental facts Plaintiff should have plead in order to have standing under Article III are absent. Had Plaintiff filed in State Court, he would need to aver: (1) an explanation of the specific access barrier or barriers encountered; (2) the way in which the barrier denied the individual full and equal access, or in which it deterred the individual on each particular occasion. (3) the date/s when the claimant encountered the specific barriers. Because Plaintiff lacks standing at the outset of this litigation to assert the ADA claims, the Court should dismiss

them. Fed. R. Civ. P. 12(b)(1).

### b. The Court Should Decline to Exercise Supplemental Jurisdiction Over the UNRUH Civil Rights Act Cause of Action.

To protect business owners from predatory litigation by high frequency plaintiffs, California has enacted legislation to make attorneys representing these plaintiffs accountable for baseless claims. Cal. CCP Section 425.50 (c) states in relevant part:

> "A complaint alleging a construction-related accessibility claim shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. By signing the complaint, the attorney or unrepresented party is certifying that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: (1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

With the absence of these state Court constraints, the attorneys at the Potter Handy firm tend to be creative with the facts when serving their frequent filer clients. Here are a few examples from cases prosecuted by this attorney.

Matter: Langer v. Colorado Professional Building, LLC et al, Case Number: 2:18- cv-02267-SJO-FFM, UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles), the honorable S. JAMES OTERO

In contrast to what he averred, Mr. Langer testified that he was in Glendale shopping for "K-Y jelly," because he happened to be in Glendale for a mediation. He then confirmed he had no intent to return to the pharmacy.

"Plaintiff is and has been deterred from returning and patronizing the pharmacy of his knowledge of the barriers that exist. *Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize the Pharmacy as a customer* once the carriers are removed." Complaint, ¶ 32; "Given its location and options, *Plaintiff will continue to desire to patronize the Pharmacy* but has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers." Complaint, ¶ 43.

> **Q: When is the next time you intend to go back to Colorado Professional Building?**
> A: I don't have any immediate plans.
> Langer Deposition, Page 42, lines 6-8

Matter: Ghadiri v. Carpet & Linoleum City, et al. , Case Number: 8:18-cv -01869AG(ADSx), UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA, the honorable ANDREW J. GUILFORD

In contrast to what he averred, Mr. Ghadiri testified buying outdoor carpeting was not a priority any longer. Plaintiff rents a house in Coto de

Caza, and had averred he was intent on shopping regularly for outdoor carpeting in Long Beach, 40 miles away.

"Plaintiff personally encountered violations of applicable legal obligations and standards that prevented him from full and equal access to convenient, safe, adequate ad appropriate restroom facilities. *Plaintiff would like to patronize the establishment again* but cannot do so until the defendants remove these barriers or obstacles to proper access equal for everyone and correct all violations of law." Complaint, ¶ 11.

> **Q: And what steps have you taken to look for outdoor carpeting since?**
> A: Is *not priority for my need right now, so I didn't take any steps*.
> Ghadiri deposition, Page 88, lines 16-18

Matter: Love v. Carnwright et al, Case Number: 5:18-cv-00190-RSWL-SP, UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA (Eastern Division - Riverside), the honorable RONALD S. W. LEW

In contrast to what he averred, Mr. Love testified he was 70 miles away from home, driving his daughter's car, when he saw a drive-through smog check, and decided to get one. Despite the fact that it is a drive-through smog check, he insisted that accessible parking spaces should have been available. He then testified that he regularly smog-checked his own car near his residence, and had no intention of going back to defendant's place of business.

"*Plaintiff would like to return and patronize* the Smog Center but will be deterred from visiting until the defendants cure the violations." Complaint, ¶ 29. "Plaintiff is and has been deterred from returning and patronizing the Smog Center because of his knowledge of the illegal barriers that exist. *Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the*

...

1. *Smog Center* as a customer once the barriers are removed. Complaint, ¶ 34." (Emphasis added).

2.  

3.     **Q: Okay, now you said just a few minutes ago that there were *two smog check facilities right next to your house*, correct?**

4. A: *Correct.*

5. **Q: Okay. You said the first one you didn't like to go to; correct?**

6. A: Yes

7. **Q: And what was the reason for that?**
A: It's not that I don't like to go to it. It's just not the one I choose.

8. **Q: Okay. Then you said - - correct me if I'm wrong - - there was another**

9. **place three miles away; right?**

10.   A: Yes, correct.

11. **Q: And you like to go there; correct?**
A: Correct

12. **Q: Okay. And you've had your truck smog checked there; correct?**

13. A: Yes.

14. **Q: On how many occasions?**
A: Once.

15. **Q: Okay. Now did you like going there?**

16. A: Yes.

17. **Q: Okay. Why did you like going there?**
A: I like the guy that works there.   Q: Okay. So when was the last time you had your truck smog

18. checked over

19. **there?**
A: I had my van smoked there.

20. **Q: Okay. And when was that?**

21. A: Maybe June. I can't remember the exact date.

22. **Q: Okay. *You were satisfied*?**
A: *Yes*.

23. **Q: It's only *three miles from your home*; correct?**

24. A: *Correct*.

25. Love's deposition, Page 39-40, lines 2–21, line 25 lines 1-3, lines 10-19

26. **Q: I would like you to tell me every single reason why you would want to drive an hour to go somewhere else for a smog check.**

27. A: *I would never drive somewhere to go get it smogged*; but if I'm doing something and I see a

28. smog place there and I need one, I'm going to get - - try and get it done.

Love Deposition, Page 41-42, lines 23-25, lines1-7

Matter: Whitaker v. Kashani et al, Case Number: 2:18-cv-00346-JFW-PLA, UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles), the honorable JOHN F. WALTER

In contrast to what he averred, Mr. Whitaker (Mr. Whitaker himself) testified that he was visiting a friend near LAX and wanted to buy candy and potato chips at a gas station convenience store, located an hour and a half away from home, by bus. Despite the fact that the convenience store had a lowered shelf for wheelchair users, he objected to certain small items placed there for sale. He then confirmed he could find and buy the same items at a hundred other convenient stores along the way.

Complaint, ¶ 22: *Plaintiff would like to return and patronize the Gas Station* but will be deterred from visiting until the defendants cure the violations.

Complaint, ¶ 26: Plaintiff is and has been deterred from returning and patronizing the Gas Station because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and *will return to patronize the Gas station as a customer* once the barriers are removed.

Complaint, ¶ 37: Given its location and options, *Plaintiff will continue to desire to patronize the Gas Station* but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seems inductive relief to remove the barriers. (Emphasis added).

**Q: How far away do you live from Westchester Mobil?**
A: This is the other side of town from where I stay so - - and I caught the bus, so it was probably maybe hour and a half bus ride. Minimum.
Whitaker deposition, Page 117, lines 22-25

>**Q: In other words, under what circumstances do you intend to go back?**
>A: Well, let me rephrase that. I don't know if I intend to go back, but I would go back.
>Page 118, Lines 5-21
>**Q: In other words, would you travel an hour and a half away from your home?**
>A: Yeah, if I'm - - if I'm going to - -
>**Q: To just go there?**
>A: No, no, if I'm going to visit my friend or if I'm in the area, yeah, of
>course. But I wouldn't say, oh, let me bypass 100 convenience stores to go here for hour 45 minutes later though.
>**Q: What was the last part of that sentence?**
>A: I wouldn't bypass 100 convenience stores to travel 145 minutes.
>**Q: In other words, there are other places along the way where you can get your drink and chips and candy bars; correct?**
>A: Correct.
>**Q: Okay, there's nothing special about Westchester Mobil; correct?**
>A: No.
>Page 56, lines 7-11

The Court may *sua sponte* decline to exercise supplemental jurisdiction over Plaintiff's Unruh claim, as it would serve the interests of judicial economy, fairness to litigants, and comity. *United Mine Workers*, 383 U.S. at 726. The Unruh Act does not arise under federal law. Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over claims arising under laws of the United States. "A state-law claim invokes 28 U.S.C. § 1331 jurisdiction only if it 'necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Shanks v. Dressel*, 540 F.3d 1082, 1093 (9th Cir. 2008). The monetary damages sought by Plaintiff under the Unruh Act substantially predominate over federal injunctive relief. *chutza v.*

*Cuddeback*, 262 F. Supp. 3d 1025, 1030 (S.D. Cal. 2017) (finding that monetary damages of $36,000 sought by plaintiff under the Unruh Act substantially predominate over federal injunctive relief); see also *Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, at 1131 (S.D. Cal. 2005) (holding that potential statutory damage award of $56,000 under Unruh Act substantially predominated over injunctive relief under the ADA); *Molski v. Hitching Post I Rest., Inc.*, No. CV 04-1077SVWRNBX, 2005 WL 3952248, at 7 (C.D. Cal. May 25, 2005) (concluding that the potential $52,000 damages award available under Unruh Act versus the injunctive relief and attorneys' fees available to plaintiff under the ADA was disproportionate enough to substantially predominated over the federal claims).

<u>Declining Jurisdiction Over the Unruh Act Would Help Deter Baseless Claims and Vexatious Litigation</u>

A compelling reason to decline supplemental jurisdiction is provided by the legislative history to the Unruh Act itself. In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act. CCP §425.50; SB1186, Chapter 383§24 (Ca.2012). "Therefore, as a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination claims, the Court declines supplemental jurisdiction over Plaintiff's Unruh Act claim." *Schutza*, 262 F. Supp. 3d at 1031. See also *Schutza v. Lamden*, Case No.: 3:17-cv-2562-L-JLB, 2018 WL 4385377, at 5. (S.D. Cal. Sept. 14, 2018) (finding it improper to allow plaintiff to use the federal court as an end-around to

California's pleading requirements); *Hitching Post I*, 2005 WL 3952248 at 8-9 (declining compelling reasons exists to decline supplemental jurisdiction over Unruh Act claims including "California courts should be given an opportunity to interpret California's disability laws, ... , and because the parties themselves are entitled surer- footed interpretation of California's disability laws").

Plaintiff has engaged in forum shopping, filing claims in Federal Courts as an "end-around" to state procedural protections. A complaint filed on behalf of a high- frequency litigant, in a California State Court, must state whether the Plaintiff is a high-frequency litigant, the number of complaints alleging a construction-related accessibility claim that the high-frequency litigant has filed during the 12 months prior to filing the complaint; the reason plaintiff was in the geographic area of the defendant's business, and the reason why he or she desired to access the defendant's business, including the specific purpose. Moreover, the complaint must be verified, and if not, it is subject to a motion to strike. It also must state in the caption "ACTION SUBJECT TO THE SUPPLEMENTAL FEE IN GOVERNMENT CODE SECTION 70616.5," and it must be signed by the Plaintiff.

Plaintiff has filed a large number of disability discrimination cases in a relatively short time, over 100. California has a strong interest in protecting its citizens and businesses from abusive litigation and also in preventing its own laws from being misused for unjust purposes. Plaintiff should not be permitted an "end- around" SB 1186's reforms. Plaintiff should file these cases in State Court if he seeks to reap the benefits of the

Unruh Civil Rights act, and he should pay the additional $1,000 filing fee per case required to initiate these suits. Plaintiff has, in effect, shortchanged the state of California an amount exceeding $150,000.

Friday, June 7, 2019



Ara Sahelian, Esq.
Attorney for Defendants