# United States District Court
# Central District of California

| | |
|---|---|
| Brian Whitaker,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Bhupinder S. Mac; Apro, LLC,<br><br>　　　　　　Defendants. | Case No. 2:19-cv-03002-ODW (Ex)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [15]** |

## I. INTRODUCTION

Defendants Bhupinder S. Mac and Apro, LLC ("Defendants") move to dismiss Plaintiff Brian Whitaker's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and ask the Court to decline to exercise supplemental jurisdiction over his California Unruh Act claim. (*See generally* Defs.' Mot. to Dismiss ("Mot."), ECF No. 15.) For the reasons below, Defendants' Motion is **DENIED** in Part and **GRANTED** in Part.[1]

---

[1] After carefully considering the papers filed in support of the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND

Brian Whitaker ("Whitaker") initiated this action on April 18, 2019, for violations of the Americans with Disabilities Act ("ADA") and related state-law claims. (*See generally* Compl., ECF No. 1.) On June 7, 2019, Defendants moved to dismiss for lack of subject matter jurisdiction and decline supplemental jurisdiction. (*See generally* Mot.)

Whitaker is a California resident with physical disabilities. (Compl. ¶ 1.) Whitaker is substantially limited in his ability to walk and requires the use of a wheelchair for mobility. (Compl. ¶ 1.) In March 2019, Whitaker visited Chevron, located at 14505 Ventura Blvd., Sherman Oaks, California. (Compl. ¶¶ 5, 10.) During his visit, Whitaker alleges that he encountered inaccessible paths of travel that do not comply with handicap accessibility requirements under the ADA. (Compl. ¶ 13.) Whitaker alleges that he will return to avail himself of goods or services but is currently deterred from visiting because of his knowledge of the existing barriers. (Compl. ¶ 20.) Defendants argue that this Court should dismiss Whitaker's claims because he lacks standing. (Mot. 1.) Specifically, Defendants argue that Whitaker has not sufficiently plead an injury in fact to satisfy the Article III standing requirement. (Mot. 3–6.) Defendants also request that the Court decline to exercise supplemental jurisdiction over Whitaker's Unruh Act claim. (Mot. 7.)

## III. LEGAL STANDARD

### A. Subject Matter Jurisdiction

Pursuant to FRCP 12(b)(1), a party may move to dismiss a case for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III, Section 2, of the United States Constitution restricts the federal "judicial power" to the resolution of "Cases" and "Controversies," and this case-or-controversy requirement is met where the plaintiff has standing to bring his or her suit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992); *see also Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Like all plaintiffs, ADA plaintiffs must establish standing at each stage of the litigation, but the

"Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (quoting *Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

Under FRCP 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

### B. Supplemental Jurisdiction

In an action over which a district court possesses original jurisdiction, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even if supplemental jurisdiction exists, district courts have discretion to decline to exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "'economy, convenience, fairness, and comity'" that

3

underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (citation omitted) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

District courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago*, 522 U.S. at 173. The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Cohill*, 484 U.S. at 350).

The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)-(3), *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998), but does require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction in such circumstances." *Exec. Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994). According to the Ninth Circuit, this "inquiry is not particularly burdensome." *Id.* When declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), "the court must identify the predicate that triggers the applicability

of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying *Gibbs* values are best served by declining jurisdiction in the particular case (the compelling reasons)." *Id*.

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

To establish Article III standing, Whitaker must demonstrate that:

> (1) he has suffered an "injury in fact" that is concrete and particularized and actual or imminent; (2) the injury is fairly traceable to the challenged actions of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 868–69 (9th Cir. 2002) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. Inc.*, 528 U.S. 167, 180–81 (2000)). Once a defendant moves to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing the court's subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Additionally, in order for ADA plaintiffs to establish standing to pursue injunctive relief, which is the only relief available under the ADA, they must demonstrate a "real and immediate threat of repeated injury" in the future. *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Whitaker has suffered an injury in fact. Whitaker alleged he visited Chevron in March 2019. (Compl. ¶ 10.) During the visit, Whitaker allegedly encountered an access barrier on Defendants' premise which prevented him a safe wheelchair accessible route of travel to the entrance of the Gas Station store. (Compl. ¶¶ 1, 13 n.1, 15.) Whitaker alleges that the barrier denied him full and equal access to the entrance of the store and caused him difficulty and frustration. (Compl. ¶¶ 16–17.); *see Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2002) (holding that alleged barriers

"need only interfere with the plaintiff's 'full and equal enjoyment' of the facility" for a plaintiff to suffer an injury in fact). Thus, Whitaker has suffered an injury in fact, and the first standing element is met.

Whitaker's injury is also traceable to the actions of Defendants and is redressable by the courts. *See Doran*, 524 F.3d at 1042 n.5 (holding that once an ADA plaintiff has encountered or becomes aware of alleged barriers that deter him from visiting the establishment or interfere with his access to the premises, he has suffered an injury in fact traceable to the defendant's conduct and redressable by the courts).

Although an encounter with barriers in violation of the ADA is sufficient to show an injury in fact for the purpose of standing, since an ADA plaintiff seeks injunctive relief, he must also show "a sufficient likelihood that he will again be wronged in a similar way." *Chapman*, 631 F.3d at 948 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). To satisfy this standard, an ADA plaintiff must show a "real and immediate threat of repeated injury." *Lyons*, 461 U.S. at 102. Thus, an ADA plaintiff can show that "either he is deterred from returning to the facility or that he intends to return to the facility and is therefore likely to suffer repeated injury." *Chapman*, 631 F.3d at 953.

Whitaker need not return to the store, it is enough that he is deterred from visiting the store due to the alleged barriers. However, an ADA plaintiff "lacks standing if he is indifferent to returning to the store or if his alleged intent to return is not genuine, or if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability." *Id.* "So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002). Whitaker alleges that he "will return to the Gas Station to avail himself of goods or services and to determine compliance with the disability access laws once it is represented to him that the Gas Station and its facilities are accessible." (Compl. ¶ 20.) However, Whitaker is deterred from visiting because his knowledge of these violations

prevents him from returning until the barriers are removed. (Compl. ¶ 20.) Whitaker has adequately alleged that he is deterred from visiting Chevron.

Accordingly, Whitaker has demonstrated standing. Therefore, the Court **DENIES** Defendants' motion to dismiss for lack of subject matter jurisdiction.

### B. Supplemental Jurisdiction

#### 1. California's Limitations on the Filing of Construction-Related Accessibility Claims

"In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act." *Velez v. Il Fornaio (America) Corp.*, CV 3:18-1840 CAB (MDD), 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018). These heightened pleading requirements apply to actions alleging a "construction-related accessibility claim," which California law defines as "any civil claim in a civil action with respect to a place of public accommodation, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard." Cal. Civ. Code § 55.52(a)(1). California's heightened pleading standard for construction-related accessibility claims require a plaintiff to include specific facts concerning the plaintiff's claim, including the specific barriers encountered or how the plaintiff was deterred and each date on which the plaintiff encountered each barrier or was deterred. *See* Cal. Civ. Proc. Code § 425.50(a). California law requires plaintiffs to verify their complaints alleging construction-related accessibility claims. *See* Cal. Civ. Proc. Code § 425.50(b)(1). A complaint alleging construction-related accessibility claims that is not verified is subject to a motion to strike. *Id*.

When California continued to experience large numbers of these actions, California imposed additional limitations on "high-frequency litigants." These additional restrictions became effective on October 15, 2015. Under California law, a "high-frequency litigant" is defined as:

> A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.

Cal. Civ. Proc. Code § 425.55(b)(1). The definition of high-frequency litigant also extends to attorneys. *See* Cal. Civ. Proc. Code § 425.55(b)(2). In support of its imposition of additional requirements on high-frequency litigants, the California Legislature found and declared:

> According to information from the California Commission on Disability Access, more than one-half, or 54 percent, of all construction-related accessibility complaints filed between 2012 and 2014 were filed by two law firms. Forty-six percent of all complaints were filed by a total of 14 parties. Therefore, a very small number of plaintiffs have filed a disproportionately large number of the construction-related accessibility claims in the state, from 70 to 300 lawsuits each year. Moreover, these lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation. This practice unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations as they are entitled to have full and equal access under the state's Unruh Civil Rights Act (Section 51 of the Civil Code) and the federal Americans with Disability Act of 1990 (Public Law 101-336).

Cal. Civ. Proc. Code § 425.55(a)(2). In response to these "special and unique circumstances," Cal. Civ. Proc. Code § 425.55(3), California imposed a "high-frequency litigant fee" requiring high-frequency litigants to pay a $1,000 filing fee at the time of the filing of the initial complaint in addition to the standard filing fees. Cal. Gov't Code § 70616.5. California law also requires complaints filed by high-frequency litigants to allege certain additional facts, including whether the action is filed by, or on behalf of, a high-frequency litigant, the number of construction-related accessibility claims filed by the high-frequency litigant in the preceding 12 months, the high-frequency litigant plaintiff's reason for being in the geographic area of the defendant's

business, and the reason why the high-frequency litigant plaintiff desired to access the defendant's business. *See* Cal. Civ. Proc. Code § 425.50(a)(4)(A). Here, Whitaker falls within the definition of a high-frequency litigant. (Pl.'s Opp'n to Mot. 15.)

### 2. Supplemental Jurisdiction

The Court declines to exercise supplemental jurisdiction over Whitaker's Unruh Act claim because California's heightened pleading standards and increased filing fees do not apply in federal court, plaintiffs can circumvent the restrictions California has imposed on Unruh Act claims alleging construction-related accessibility claims simply by relying on § 1367(a)'s grant of supplemental jurisdiction to file their Unruh Act claims in federal court when they combine an Unruh Act claim with an ADA claim for injunctive relief. The number of construction-related accessibility claims filed in the Central District has skyrocketed both numerically and as a percentage of total civil filings since California began its efforts to curtail the filing of such actions. According to statistics compiled by the Clerk's Office, in 2013, the first year in which California's initial limitations on such cases were in effect, there were 419 ADA cases filed in the Central District, which constituted 3% of the civil actions filed. Filings of such cases increased from 928 (7% of civil cases) in 2014, the year before the imposition of the additional $1,000 filing fee and additional pleading requirements for high-frequency litigants, to 1,386 (10% of civil cases) in 2016, the first full year of those requirements. The number and percentage of such cases filed in the Central District has increased in each year since California acted to limit the filings by high-frequency litigants, reaching 1,670 (12% of civil cases) in 2017, 1,670 (18% of civil cases) in 2018, and 1,868 cases (24% of civil cases) in the first six months of 2019.

By enacting restrictions on the filing of construction-related accessibility claims, California has expressed a desire to limit the financial burdens California's businesses may face for claims for statutory damages under the Unruh Act. By filing these actions in federal court, Whitaker has evaded these limits and sought a forum in which he can claim these state law damages in a manner inconsistent with the state law's

requirements. This situation, and the burden the ever-increasing number of such cases poses to the federal courts, presents "exceptional circumstances" and "compelling reasons" that justify the Court's discretion to decline to exercise supplemental jurisdiction over Whitaker's Unruh Act claim in this action under 28 U.S.C. § 1367(c)(4).

Declining to exercise supplemental jurisdiction over Whitaker's Unruh Act claim in these circumstances supports the values of judicial economy, convenience, fairness, and comity:

> As a high-frequency litigant . . . the Court finds it would be improper to allow Plaintiff to use federal court as an end-around to California's pleading requirements. Therefore, as a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination claims, the Court declines supplemental jurisdiction over Plaintiff's Unruh Act claim.

*Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017); *see also Gibbs*, 383 U.S. at 726. Although some plaintiffs and their counsel have argued that they file in federal court not to evade California's restrictions, but because of the quality of the judges, the ease of the ECF system for filing, and the prevalence of federal ADA decisional authority, the Court finds such arguments unpersuasive and belied by the recent nature of the dramatic increase in the filing of such cases in federal court. Indeed, those reasons, if true at all, do not explain why nearly nine times more construction-related accessibility actions are being filed in the Central District in 2019 than were filed in 2013. As one district court recently explained:

> In attempting to show that his decision to file in federal court is not simply an attempt to evade California's heightened pleading rules, Schutza insists the 'quality of judges [and] the quality of legal rulings' is higher in federal court. This argument, of course, flies in the face of our judicial system's equal respect for state and federal courts. The convenience of electronic filing and the widespread availability of published opinions—other arguments Schutza advances—may be creature comforts that make filing

in federal court more enticing, but they hardly outweigh the disservice that is done to California's efforts to implement and interpret its own law when federal courts exercise supplemental jurisdiction over these claims. If Schutza were able to articulate a persuasive reason for his decision to file in federal court, perhaps this would be a different story. As it stands, though, the Court can discern no basis for the state law claim being filed in federal court other than to prevent California from being able to apply and enforce its own rules.

*Schutza v. Alessio Leasing, Inc. (Alessio Leasing)*, CV 18-2154 LAB (AGS), 2019 WL 1546950, at *3 (S.D. Cal. Apr. 8, 2019); *see also Schutza*, 262 F. Supp. 3d at 1031 ("It is unclear what advantage—other than avoiding state-imposed pleading requirements—Plaintiff gains by being in federal court since his sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act."). "Federal courts may properly take measures to discourage forum-shopping, and here, where Plaintiff has filed over one hundred disability discrimination cases, and settled more than fifty of them in a two-year period, the Court finds this to be a compelling reason to decline supplemental jurisdiction." *Schutza*, 262 F. Supp. 3d at 1031 (footnote omitted) (citing *Hanna v. Plumer*, 380 U.S. 460, 467–68 (1965)).

California's elected representatives, not this Court, have enacted laws restricting construction-related accessibility claims, and, as a result, dictated that these claims be treated differently than other actions. That the astronomical growth in the filing of these cases in federal court has coincided with California's limitations on construction-related accessibility claims suggests that it is precisely because the federal courts have not adopted California's limitations on such claims that federal courts have become the preferred forum for them.

The Court therefore concludes that "exceptional circumstances" and "compelling reasons" support the Court's decision to decline to exercise supplemental jurisdiction over Whitaker's Unruh Act claim under 28 U.S.C. § 1367(c)(4).

Exercising the Court's discretion to decline supplemental jurisdiction does not deprive Whitaker of any remedies. Nor does it allow an ADA claim for injunctive relief

to go unaddressed. The ADA claim remains pending in this Court. Moreover, by declining to exercise supplemental jurisdiction, the Court is merely restoring the balance Congress struck when it enacted the ADA and provided a private right of action for injunctive relief and an award of attorneys' fees, but did not allow for the recovery of statutory damages.

Accordingly, the Court **GRANTS** Defendants' motion to decline supplemental jurisdiction.

## V. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss for lack for subject matter jurisdiction is **DENIED** and Defendants' request that this Court decline to exercise supplemental jurisdiction over Whitaker's Unruh Act Claim is **GRANTED.**

**IT IS SO ORDERED.**

October 1, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**